CLIFFORD (MORRISON v.). See Case No. 9,846.

CLIFFORD (ROBINSON v.). See Case No. 11,948.

CLIFTON (JONES v.). See Case No. 7,457.

## Case No. 2,895.

### CLIFTON v. QUANTITY OF COTTON. SHELDON v. The WATER WITCH. BROWER et al. v. SAME.

[36 Hunt, Mer. Mag. (1856) 706.]

District Court, N. D. New York.

PAROL CONTRACT OF AFFREIGHTMENT — DUTY TO CARRY UNDER DECK — SUIT BY CONSIGNEES FOR DAMAGE TO CARGO.

[1. Where cotton is shipped as upon a general ship at a uniform rate of freight, it is the duty of the master, in the absence of any contract, consent, or proof of any established usage to the contrary, to carry such cargo under deck as would be required by a clean bill of lading.]

[2. Where the consignees or agents of the shippers made advances on such cotton, which was, on arrival, delivered to them, together with the freight bill, they may maintain a

suit against the shipowners for damages to the cargo, although the bill of lading was not signed by the master.]

[In admiralty. Libels by John Clifton, claimant of the brig Water Witch, against a quantity of cotton, to recover freight, and by William H. Sheldon, and by John W. Brower and others, claimants of the cotton, against the brig for damages to the same. The suits were heard together.]

HALL, District Judge. In the suit first above entitled, the libelant seeks to recover the freight, claimed to be due to the Water Witch, for the transportation on board that vessel of the cotton libeled, from a port in Texas to New York City. This claim of the owner of the Water Witch is resisted on the ground that the cotton received on shipboard, by the fault of the master and owners of the vessel, a damage exceeding in amount the whole freight, which would otherwise have been due for such transportation. The other suits are prosecuted to recover such damages to the cotton, and the three suits were heard together.

I think the evidence sufficiently establishes the right of the libelants, Sheldon and Brower & Co., to maintain these suits in their own names, as the consignees and agents of the shippers, having a personal interest, by reason of advances made upon the cotton consigned to them respectively. It is true that the bills of lading prepared and presented by the shippers for the master's signature, and in which these libelants were named as consignees, were never signed by the master; but his refusal to sign these bills was based upon grounds entirely distinct from the objection that they did not name the proper consignees, and on the arrival of the vessel at New York they were by him recognized as the consignees of the cotton, by delivering it to them as such, and presenting to them his bill for the freight thereof.

The charter party proved in these cases was not made with the shippers or consignees, nor were they or either of them bound by its provisions, or even made acquainted with its contents. The cotton was shipped, as upon a general ship, at a uniform rate of freight, and there was no agreement or consent, on the part of the shippers, that part of the cargo should be carried on deck. It was, therefore, the duty of the master—as it is always the duty of a master, in the absence of any contract, consent, or established usage, allowing the cargo, or a part of it, to be carried on deck—to carry it under deck, as would be required under a clean bill of lading. Upon a parol contract of affreightment, where there are no express stipulations in regard to the extent of the shipowner's liability, the extent of that liability, as implied by law, is doubtless that which is ordinarily assumed under the customary or common bill of lading, and the goods must, as a general rule, be carried un-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

der deck. I agree that a well-known and well-established custom to carry on deck at the shipper's risk, in a particular trade and between particular ports, in the absence of any express contract or consent, on the part of the shipper or owner of the freight, avoids, in respect to that particular trade, the force of the general rule, which had its origin in the general usages of commerce; and this, whether the contract of affreightment in the particular case is by parol, or is contained in the ordinary form of what is called a "clean bill of lading;" but such particular custom must be clearly established, and well known. The established rule upon the subject is well laid down by Judge Ware, in the case of The Paragon [Case No. 10,708], with his accustomed precision and elegance of expression, as well as with the accustomed accuracy of that learned and able admiralty judge. See, also, The Rebecca [Id. 11,619].

But in this case there is no satisfactory proof of such a custom. On the contrary, the preponderance of the proof is against the existence of such custom. Besides, the freight agreed to be paid was a uniform rate, and the ordinary rate of under-deck freight; and if, as stated by Mr. Justice Story in Vernard v. Hudson [Id. 16,921], an agreement that goods shipped under a clean bill of lading are to be carried on deck may be deduced from the fact that the goods are, by the terms of such bill, to pay deck freight only, it would seem to follow that an agreement for the payment of under-deck freight, in the absence of any proof of an express contract to the contrary, ought to be held to establish conclusively the obligation of the master to carry the goods under deck.

Upon the whole evidence, then, I shall hold that the liabilities of the Water Witch are the same as though the cotton had been shipped under a clean bill of lading, (except that there is no admission that the cotton was shipped in good order,) and had, under such a bill of lading, been consigned to the libelants in the suits for damages.

In regard to the condition of the cotton when it was shipped, and the great question in regard to the damage received on shipboard, and for which the vessel is liable, there is a most decided conflict of testimony,—equaling, in that respect, the conflict of testimony in a collision case between two vessels, each with a numerous crew, who witnessed the collision from entirely different points of view, and severally testify under the influence of the natural and strong prejudice always felt in favor of "vessel and owners." Nevertheless, I cannot doubt that the very bad condition of the cotton at the time of its delivery in New York resulted, in part at least, from sea-damage, for which the vessel is liable. It is true that it was probably received in bad condition, from what is called "country damage," and certainly the vessel is not liable for the whole damage received from the time it was first packed in bales to its arrival in New York; but I see no satisfactory mode of determining the amount of sea-damage, (as distinguished from "country damage," or damage received before shipment,) for which the Water Witch is liable, except by a reference, affording all parties full opportunity to produce all the evidence which can be adduced upon this question.

There must, therefore, be an order of reference in the three suits to ascertain: 1. The amount of freight upon the cotton delivered to Brower & Co. and Sheldon, respectively, allowing only at the "on-deck" rate for so much of the cotton as was actually carried on deck. Vernard v. Hudson [supra]. 2. The amount of sea-damage upon each lot of such cotton, for which the brig is responsible. And on the coming in and confirmation of such report a final decree should be entered, according to the rights of the parties, as determined by such report.

[NOTE. On the coming in of the report the district court made a final decree (case unreported) dismissing the libel of Clifton, but in favor of the libelants Brower and others, and Sheldon, and from this decree Clifton appealed to the circuit court, where the decree was reversed as to him, but affirmed as to the libelants in the other suits. Brower v. The Water Witch, Case No. 1,971.

[Both Clifton and Sheldon appealed to the supreme court. The appeal of Sheldon was dismissed for want of jurisdiction, and, on the hearing on Clifton's appeal, the decree of the circuit court was affirmed. See note at end of Brower v. The Water Witch, supra.]